# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,                    *

Plaintiff                          *

v                                  *          Civil Action No. ELH-16-3674

THOMAS SIRES, *et al.*,            *

Defendants                         *

                                  ***

## MEMORANDUM OPINION

Plaintiff Donald R. Pevia, who is self represented, is an inmate at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He filed suit on November 8, 2016, pursuant to 42 U.S.C. § 1983, naming as defendants correctional officers Thomas Sires, Allan Graham, Jamie Farris, and Hearing Officer David Sipes. ECF 1. Plaintiff included exhibits with his suit, filed collectively as part of ECF 1.[1] The defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 16. Their motion is supported by a Memorandum (ECF 16-1) (collectively, the "Motion") and many exhibits. Plaintiff opposes the motion (ECF 20, "Opposition"), and has also submitted exhibits. ECF 20-1. No reply was filed.

A hearing is not necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

---

[1] Citations are to the court's electronic docket.

# I.  Background

## A.  Plaintiff's factual assertions

On January 3, 2016, while Pevia was walking to afternoon yard, he was pulled to the side by correctional officer Michael VanMeter[2] for a "random" pat down.  VanMeter found a "home made lollipop" in plaintiff's pocket.  ECF 1 at 3. VanMeter permitted plaintiff to enter the yard. *Id*. Plaintiff then observed VanMeter consult with other officers and walk off.  A few minutes later, a squad of about eight officers approached plaintiff's recreation cage and "ordered plaintiff to put handcuffs on."  *Id*.  Pevia was then escorted back to his cell, where he was strip searched and his cell was searched.  No candy was found on plaintiff.  However, a bag of lollipops was found on his bunk.  *Id*.  Plaintiff was escorted to Housing Unit 1 and placed on disciplinary segregation pending adjustment.  *Id*.

Subsequently, plaintiff was served with a disciplinary ticket and charged with several rule infractions regarding the possession of controlled dangerous substances or other contraband.  *Id*. at 3-4. In particular, he was charged with violations of Rule 111,  Rule 112, Rule 114, and Rule 406, all pertaining to controlled substances or contraband.  *Id.*

Plaintiff's disciplinary hearing was held on January 7, 2016, with Sergeant Farris and Hearing Officer Sipes in attendance.  *Id*. at 4.  Before the hearing began, Farris provided plaintiff with pictures of the field test that was conducted on the candy by Graham (*id.*), which indicated the candy contained Buprenorphine.  Plaintiff maintains the test was "falsified."  *Id*.  Plaintiff asked where the candy was and Farris explained that the Maryland State Police ("MSP") took possession of the candy to test it in their laboratory.  Plaintiff maintained that there were no drugs in the candy and inquired why the hearing was being conducted during the pendency of the

---

[2] The record contains various spellings of the surname.  *See*, *e.g.*, ECF 16-3 at 17 (using spellings of Vanmeter, VanMater, and Van Meter.

investigation, and before the conclusion of the MSP test. *Id.* He was confident that the MSP test would exonerate him. *Id.* at 4, 6.

Plaintiff states that Sipes advised him that because five years had not elapsed since plaintiff had assaulted a staff member, he would have to "override the Matrix system" and put plaintiff in a "poor Category," and therefore he could receive 365 days of segregation if he were found in violation of the rules. ECF 1 at 5. However, plaintiff told Sipes that an inmate cannot receive more than 90 days of segregation. *Id.*[3] Farris offered plaintiff 60 days on segregation and one-year suspension of visitation, rather than an indefinite suspension, if plaintiff pleaded guilty. *Id.* But, Farris claimed that a violation based on a drug charge requires loss of visitation. *Id.* at 5.

Plaintiff "thought about" the merits of the offer and "all the legal issues he had going on . . . ." *Id.* He was also concerned about his cellmate, who faced similar charges because he (*i.e.*, the cellmate) failed to report plaintiff's conduct. So, plaintiff negotiated to have his cellmate removed from disciplinary segregation. *Id.* at 5-6. Accordingly, Pevia decided to plead guilty, in exchange for 60 days of segregation, one year loss of visitation , and the loss of 60 good conduct credits. *Id.* at 6.

On January 7, 2016, plaintiff filed an appeal from the hearing officer's decision. ECF 16-3 at 33. He filed a grievance with the Inmate Grievance Office on January 20, 2016. ECF 1 at 9. On May 5, 2016, plaintiff received notice from Patricia-Goins Johnson, Executive Field Support Service Director for the Maryland Department of Public Safety and Correctional Services

---

[3] Plaintiff also points out in his Reply that, as of October 29, 2015, hearing officers are limited to the imposition of no more than 90 days of segregation for any rule violation. ECF 20-1 at 8; *see also* ECF 20-1 at 10-11. Given the extent of plaintiff's knowledge of the rules, it would seem unlikely that, even if the assertion was made, he felt threatened by it, knowing that it was incorrect.

("DPSCS"), advising him as to the test results conducted by the MSP on March 10, 2016. *Id.* at 9. Charles Miller, a Forensic Scientist with the MSP, tested the confiscated candy and determined that no drugs were present in the candy. *Id*. at 9, 18. On April 27, 2016, Goins-Johnson ordered Warden Frank Bishop to reverse plaintiff's convictions and to vacate the sanctions.[4]

Because plaintiff had not received a response to his grievance, he filed another inmate grievance. *Id.* at 9-10. Further grievance proceedings and appeals were not successful. *Id.* at 10-11.

Pevia maintains that the use of the field test to test his candy for drugs violated his due process rights, because it is not a method of testing, and leads to false positives. *Id.* at 12. He asks the court to enjoin defendants from using the field test for drugs in food items, to prevent future false positives results, without giving inmates "a proper chance to argue and present a defense." *Id*. at 12. Plaintiff also seeks compensatory and punitive damages. *Id.*

Plaintiff notes that the disciplinary procedure has since been changed, and inmates are now placed in administrative segregation pending the results of MSP testing. ECF 20 at 12. He also provides affidavits from two other inmates who have been caught selling candy; the candy field tested positive for Buprenorphine; and they were charged and convicted of inmate rule violations that were ultimately vacated when the candy tested negative for CDS when tested by the MSP. ECF 20-1 at 5-7.[5]

---

[4] As discussed, *infra*, the sanctions had been reduced on February 2, 2016. ECF 16-3 at 34-35. At the time of the reversal, the sanctions were 60 days of segregation, the loss of 30 good conduct credits, and "6 months loss of visits . . . ." *Id.* at 18.

[5] Plaintiff does not address whether, even without drugs in the candy, the candy nevertheless constituted contraband, for which he could have been sanctioned.

## B. Defendants' factual assertions

Defendants' version of the facts does not differ materially from plaintiff's version of events. Defendants have, however, amplified the facts.

On January 3, 2016, plaintiff was searched by Correcitonal Officer VanMeter, who found plaintiff in possession of a small bag of an unknown substance. ECF 16-3 at 17 (VanMeter's Report; Notice of Inmate Rule Violation). Correctional Officer Sergeant Allan Graham, having completed the MMC Narcotic Test course, was certified to use the Buprenorphine HCL Test Kit to test suspicious substances. ECF 16-4 (Decl. of Graham), ¶ 4. Graham tested the substance seized from plaintiff and from his cell, using the Buprenorphine HCL Test Kit. ECF 16-4, ¶ 5; ECF 16-3 at 5-16, 20-22, 24-27. The weight of the substance was 25.7 grams. ECF 16-3 at 21. The results of the field testing indicated a positive reading for Buprenorphine. *Id.* The substance was then released to Sires and Graham, who completed the Chain of Custody Log. ECF 16-4, ¶ 8; ECF 16-3 at 6, 22. Graham avers that he did not falsify the reports or results of the Buprenorphine test administered on January 3, 2016. ECF 16-4, ¶ 8.

Sires avers that he does not recall being present when graham tested the substance was tested with the Buprenorphine HCL test kit on January 3, 2016. ECF 16-5 (Sires's Decl.), ¶ 4. But, he took possession of the substance from Graham following the completion of the test on that date. *Id.* ¶ 5. He placed the substance in a sealed evidence bag and placed the bag in the evidence room for safekeeping. *Id.* ¶ 6; ECF16-3 at 6, 22. Sires avers that he did not falsify any reports or the results of the Buprenorphine tests. ECF 16-5, ¶ 7.

Also on January 3, 2016, plaintiff was served with a Notice Of Inmate Rule Violation regarding VanMeter's discovery of the contraband on plaintiff. ECF 16-3 at 17-18. He was charged with violation of Rule 111 (possession or use of an unauthorized medication, drug, or

substance identified as an intoxicant, excluding alcohol and a controlled dangerous substance); Rule 112 (possession or use of a drug or controlled dangerous substance); and Rule 114 (possession of a controlled dangerous substance, intoxicant, or alcohol in sufficient quantity or packaging material that suggests an intent to distribute or distribution). ECF 16-3 at 17. The following day he was served with a Notice Of Inmate Rule Violation, charging the same violations in regard to the contraband found in his cell, but adding a charge for violation of Rule 406 (possess or pass contraband). *Id*. at 2. According to defendants, plaintiff did not request representation or witnesses to attend his hearing, but did request "Actual Drug testing/Photos or actual Candy balls present during hearing". *Id*. at 3.

The disciplinary hearing was held on January 7, 2016, before Hearing Officer David Sipes. *Id*. at 28-36; ECF 16-6. The parties reached an agreement by which plaintiff pled guilty to rule violations 112 and 114. ECF 16-3 at 29. In exchange, plaintiff was sanctioned with a total term of 60 days of segregation and the revocation of 60 good conduct credits. ECF 16-3 at 29. Additionally, plaintiff's visitation privileges were suspended for one year. *Id*.

Sipes avers that when plaintiff entered the hearing room Sipes turned on the recorder and did not turn if off during the hearing. ECF 16-7, ¶¶ 3, 4.[6] Further, Sipes avers that he followed DPSCS policy, procedures, and regulations concerning the conduct of the inmate disciplinary hearing. *Id*. ¶ 5. Chief Hearing Officer George Gregory reviewed the audio and written hearing records and determined that Sipes conducted himself in a professional manner, following all

---

[6] ECF 16-6 includes the audio recording of the disciplinary hearing. Although Hearing Officer Sipes avers that "[w]hen inmate Donald Pevia, 366944, entered the hearing room, I turned on the recording device as directed by policy[]" ( ECF 16-7, ¶ 3) it is apparent that plea negotiations were discussed prior to the activation of the recording device. When the recording begins the parties immediately enter the plea agreement on the record. ECF 16-6. Whether those plea negotiations occurred inside or outside the hearing room is not important to the disposition of this case. The parties agree that they entered into plea negotiations and in fact reached a plea agreement, which was entered on the record.

policies, procedures, and regulations concerning the inmate disciplinary hearing process. ECF 16-6 (Decl. of Gregory), ¶ 2.

Farris served as NBCI's Institutional Representative during plaintiff's adjustment hearing. ECF 16-3 at 28-31; ECF 16-8, ¶ 4. Farris confirms that he had unrecorded conversations with plaintiff prior to the hearing. ECF 16-8, ¶ 4. A plea agreement was reached wherein plaintiff agreed to plead guilty, in exchange for the agreed upon sanctions of 60 days segregation, revocation of 60 good conduct credits, and loss of visitation for one year. *Id.* Farris avers that plaintiff asked to have the substance tested a second time and Farris advised him that he would need to address that matter administratively. *Id.* ¶ 5. Further, Farris avers that neither he, nor anyone in his presence, intimidated or coerced plaintiff to enter a guilty plea at the adjustment hearing. *Id.* ¶ 8. To the contrary, defendants maintain that Pevia waived his right to an adversarial hearing. ECF 16-1 at 12.

Plaintiff appealed the disciplinary findings on January 7, 2016, claiming that he pleaded guilty in order avoid a larger sanction and to exonerate his cellmate. ECF 16-3 at 33. He also claimed the field test was wrong and requested that the verdict be overturned or that his segregation time be cut by 30 days and his visitation restored. *Id.* On February 2, 2016, plaintiff's appeal was reviewed and his loss of good conduct credits was reduced from 60 days to 30, and his loss of visitation was reduced from one year to six months. ECF 16-3 at 34-35.[7]

Pursuant to Division of Corrections Directive ("DCD") 110-17 and Institutional Directive NBCI110.0017, a positive field test may be submitted as evidence at an adjustment hearing. ECF 16-3 at 39-41. However, where an actual criminal prosecution is contemplated, a definitive analysis of the specimen by the Maryland State Police is required. *Id.*

_____

[7] In ECF 16-1 at 5, defendants attribute this decision to "Defendant Bohrer." To my knowledge, "Bohrer" is not a defendant in this case.

On March 10, 2016, a forensic scientist with the MSP issued a report finding that no CDS was detected in the substances seized from plaintiff. *Id*. at 37. As a result, plaintiff's convictions for violations of Rule 112 and Rule 114 were reversed and the sanctions were vacated. ECF 16-3 at 18. Indeed, plaintiff acknowledges that, after the MSP test came back, plaintiff's convictions were reversed, his good conduct credits were restored, and visitation was reinstated. ECF 1 at 18.[8]

Defendants note that plaintiff is serving two consecutive 30-year sentences, with an expiration date of April 2, 2069. ECF 16-3 at 38. His current release date is November 30, 2060. *Id.* In their view, plaintiff has not suffered any adverse impact as a result of the false positive filed test. *See* ECF 16-1 at 5.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 29. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

---

[8] Defendants do not address whether Pevia's possession of the candy was, in and of itself, the possession of contraband, for which Pevia could have been sanctioned. Pevia was charged with a violation of Rule 406 (possess contraband), but did not admit to that charge.

12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222, (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[9]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).

---

[9] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, *supra*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (Citation omitted).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary

judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has moved for limited discovery (ECF 15), for the purpose of locating defendants Sires, Farris, and Sipes, so that they could be served with the suit. Plaintiff's request is obviously moot and shall be denied. The parties have each submitted many exhibits, and there is no indication that any additional materials would create a genuine issue of material fact. Nor is there a challenge to construing the motion as one for summary judgment, rather than as a motion to dismiss. As such, I am satisfied that it is appropriate to address defendants' motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very

terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at

564-66, 592.

The hearing officer's decision must contain a written statement of the evidence relied upon to satisfy due process. *See Baxter v. Palmigiano,* 425 U.S. 308, 322, n. 5 (1976), *Wolff*, 418 U.S. at 564. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Federal courts do not review the accuracy of a disciplinary hearing officer's findings of fact so long as there is some evidence in the record to support the findings. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). Here, plaintiff received notice of the rule violation and had an opportunity to be heard on January 7, 2016, which he waived by pleading guilty. *See* ECF 16-3 at 29-30. In sum, plaintiff received all the process that was due.

In his Opposition, plaintiff clarifies that Sires and Graham falsified the field test results in order to place him on disciplinary segregation. ECF 20 at 12. Plaintiff's bald allegations are simply unsupported by the record. Moreover, even if Sires and Graham had falsified the record, as noted above plaintiff received all the process he was due. He was offered a full disciplinary hearing, which he declined. *See* Code of Maryland Administrative Regulations 12.02.27.25.

To be sure, plaintiff was vindicated when the test conducted by the MSP showed no contraband in the candy seized from plaintiff. He complains, *inter alia*, that he should not have been subjected to prison disciplinary proceedings before reliable testing was performed, in lieu of field testing.

A number of courts have examined similar issues and concluded that "there is no denial

of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (citing *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991)); *Young v. Hoffman*, 970 F.2d 1154, 1156 (2nd Cir. 1992) (stating that "administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred"), *cert. denied*, 510 U.S. 837 (1993). Plaintiff's frustration with having to proceed with his disciplinary hearing without the results of the MSP test is understandable.  It does not, however, rise to a constitutional violation.

The gravamen of the complaint regarding the violation of plaintiff's due process rights during his adjustment hearing is the loss of a liberty interest that resulted.  There is no question that plaintiff has a liberty interest in maintaining earned good conduct credits.  It is well established that the revocation of good conduct credits may not take place without first providing the inmate with the protections of procedural due process. *See Wolff v. McDonnell*, 418 U.S. at 557.  In the instant case, however, plaintiff's good conduct credits and visitation were restored, as required by the decision reversing adjustment conviction.  ECF 1 at 18.  Thus, any procedural due process violation that took place was cured.

Plaintiff maintains, however, that he was injured as a result of his adjustment conviction, which could not be corrected by the reversal, because he already had served a period of wrongful confinement in segregation and his loss of visiting privileges.  ECF 20.  The liberty interest plaintiff asserts is tenuous at best.  The touchstone for determining whether a particular housing assignment within the prison invokes a liberty interest has been explained by the Supreme Court. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997), this standard was applied to allegations as to confinement on administrative segregation for six months in "cells [that] were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above." The Court determined that those conditions did not implicate a liberty interest in avoiding administrative segregation because they did not represent a significant hardship. *Id.*

In light of this analysis, plaintiff's confinement to disciplinary segregation was not a significant hardship. The conditions of confinement on disciplinary segregation that plaintiff alleges here do not begin to approach the level of significant hardship contemplated by the applicable standard. Nor does the suspension of plaintiff's visiting privileges change the analysis. *See White v. Keller*, 438 F. Supp. 110, 115, n.4 (D. Md. 1977) (prisoners and their visitors do not have a constitutional right to prison visitation but a permanent ban may implicate the Eighth Amendment). This conclusion precludes a claim for damages under § 1983 for the extra days that plaintiff spent on disciplinary segregation status. *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996); *see also Ragan v. Lynch*, 113 F.3d 875 (8th Cir. 1997).

To the extent that plaintiff alleges that correctional staff conspired to file and prosecute the disciplinary charges against him, such a claim fails. A conclusory allegation of a conspiracy, such as is made in this case, is insufficient to state a claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997) (unsupported claim of conspiracy to issue false disciplinary reports fails to state claim); *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and factual support to suggest a meeting of the minds.") (quotation omitted); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)

(complaint alleging conspiracy to retaliate in conclusory terms deficient); *Langworthy v. Dean*, 37 F. Supp.2d 417, 424-25 (D. Md. 1999).[10]

## IV. CONCLUSION

For the foregoing reasons, defendants' dispositive motion, construed as a motion for summary judgment, will be GRANTED and judgment will be ENTERED in favor of defendants and against plaintiff. A separate Order follows.


December 15, 2017                                    /s/
Date                                          Ellen L. Hollander
                                              United States District Judge

---

[10] Because I find no constitutional violation, I need not address defendants' claim of qualified immunity. *See* ECF 16-1 at 13-14.